UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRE'ID O.I. HODGES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JERALD SHARON, et al.,<br><br>　　　　Defendants. | Case No.: 1:13-cv-00654-SAB (PC)<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS IDENTIFIED HEREIN<br><br>THIRTY-DAY DEADLINE |

Plaintiff Tyre'Id O.I. Hodges is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS[1]

Plaintiff is a 46 year old male inmate currently incarcerated at California Substance Abuse and Treatment Facility (CSATF) at Corcoran State Prison.

Plaintiff names Sharon (Jewish Chaplain), Reynoso (Associate Warden), Allison (Acting Warden), Diaz (Acting Warden); Ojeda (Catholic Chaplain), Rosa Geumbe (Catholic Chaplain), Hetebrink (Protestant Chaplain), Alverez (Protestant Chaplain), Hall (Appeals Coordinator), Cota (Correctional Counselor), Etchebehere (Associate Warden), and Foston (Chief Inmate Appeals), Lozano, (Chief Inmate Appeals), as Defendants in this action.

Plaintiff contends that Defendants have violated his right to freedom of religion, including religious dietary beliefs and religious scruples.

On October 23, 1998, Plaintiff was transferred to CSATF and is currently housed in Facility A Building 2. In 1995, Plaintiff adopted the beliefs of Messianic Judaism, and from 1995 to 2009, he

---

[1] For ease of reference, the Court sets forth the factual allegations as they appear in the complaint in relation to each of the several inmate appeals that Plaintiff filed, and not necessarily in chronological order.

was not able to practice his faith in an open forum. In November 2009, the Messianic Jewish members were afforded the opportunity to have use of the Facility Chapel but without a Messianic Jewish Rabbi, no Messianic Jewish prayer books, no bibles, no prayer shawls, no skull caps, or Messianic Jewish CDs or DVDs. Plaintiff also requested to have kosher meals provided for the specific Holy Days and daily kosher diet, but was denied by Chaplain Sharon.

On August 3, 2010, Plaintiff filed an inmate appeal. On August 27, 2010, Plaintiff was interviewed by Rosa Geumbe (the Catholic Chaplain) who was being consulted by Jerald Sharon (Jewish Chaplain). The appeal was partially granted at the first level, and Plaintiff was allowed to worship on Saturdays, from Friday sundown to Saturday morning with services on Saturday morning, and the Seven Jewish "Holy Days" which was already permitted under the prison regulations. Plaintiff was denied request to have Messianic Judaism be considered under the Jewish category, kosher meals for Holy Days and daily consumption, and relief from work assignments on Holy Days.

Plaintiff appealed to the second level of review. On June 20, 2012, the appeal was denied by D. Foston (Chief Inmate Appeals).

On October 25, 2010, Plaintiff filed an appeal and requested permission to hold a Chanukah religious meal on December 3, 2010, as the second religious meal of the year. On November 6, 2010, Plaintiff was interviewed by Heterbrink (Protestant Chaplain). Plaintiff's request was refused because he did not meet the time guidelines.

On January 28, 2010, the appeal was partially granted at the second level by Warden Allison stating permission to have a Christmas meal was moot, and at the meal on January 11, 2011, Messianic Jewish believers were required to eat with the traditional Christians and were not provided a kosher meal.

On or about September 2, 2011, Plaintiff received a response from the Director's level of review, D. Foston. It was found that Messianic Jewish inmates expressed a sincere desire to celebrate both Yom Kippur and Passover with a special meal in accordance with their sincerely held religious beliefs. The requirement that the Jewish join the traditional Christian in celebrating Christmas and Easter is contrary to their expressed beliefs that those two holidays are pagan and as such, they have

3

no wish to celebrate them. The matter was referred to CSATF's Religious Review Committee for consideration of Plaintiff's request.

Acting Warden Allison committed insubordination by ignoring the direct orders given by D. Foston. She stated that when Jewish feasts are celebrated Messianic Jewish inmates will be served regular meals, however, this is contrary to Plaintiff's sincerely held relief beliefs.

Jewish Chaplain Sharon continued to deny Plaintiff's request for kosher meals to be served to the Messianic Jewish group during the Passover week.

On December 5, 2010, Plaintiff filed an appeal and requested a Chanukah special religious meal, which was to be the last High Holy meal of the year.

On January 17, 2011, Plaintiff was interviewed by J. Sharon. Plaintiff was denied attendance to the Chanukah religious meal by Defendant Sharon because Messianic Jews such as Plaintiff are not considered to be Jewish.

On January 27, 2011, Plaintiff resubmitted the appeal. On or about April 19, 2011, Plaintiff received a second level response to his appeal. In the second level response, Appeals Coordinator, R. Hall, made note in the summary that Plaintiff was "not Jewish [and] not eligible for the Chanukah meal." The appeal was ultimately denied by K. Allison.

On April 25, 2011, Plaintiff submitted an appeal to the Directors level of review. On or about August 26, 2011, it was determined that "the event in question was provided for inmates of the traditional Jewish faith and not of the Messianic Jewish faith. But, he goes on to say that any inmate may request a special religious event through an institutional Chaplain for his particular faith, which is entirely contradictory, seeing how that this is the very reason for submitting the appeal in the first place."

On December 27, 2010, Plaintiff along with 15 other members of the Messianic Jewish group, filed an appeal. It was requested that Plaintiff be provided time in the main chapel area from 9:00 to 11:00 a.m. on Saturday.

On December 20, 2010, Plaintiff was interviewed by Jose D. Ojeda, and he contended that religious services for Messianic Jewish inmates and Native American inmates housed at Facility G had been scheduled at the same time in the chapel library on the first and third Saturdays of the month

1  from 1200 to 1400 hours.  Plaintiff explained that the entire situation had become volatile and tense.
2  Plaintiff was advised that if he withdrew the appeal he could be given the first and third Saturdays of
3  the month.  However, Plaintiff refused to sign-off on the appeal, he only gave his group one day per
4  month.

5        On February 6, 2011, Plaintiff re-submitted his appeal.  On April 5, 2011, he received a second
6  level response.  Plaintiff requested that a religious review committee review his request to allow
7  Messianic Jewish inmates to worship and congregate in the chapel on Saturday from 0900 to 1100
8  hours.  Plaintiff's appeal was granted in that the religious review committee would review his request.

9        On April 12, 2011, Plaintiff filed a further appeal.

10       On or about September 10, 2011, the appeal was denied.

11       On August 29, 2011, Plaintiff requested a "breaking our fast" religious meal for Yom Kippur.
12 On October 12, 2011, Plaintiff was interviewed regarding the appeal in which he and others expressed
13 a sincere desire to celebrate both Yom Kippur and Passover with a special religious meal.

14       Plaintiff submitted a further appeal on October 30, 2011.  On June 30, 2012, Plaintiff received
15 a response from the director's level and his appeal was denied.

16       On February 20, 2012, Plaintiff filed an appeal requesting "Passover" special religious meal
17 for Messianic Jewish fellowship.  Plaintiff's appeal was partially granted.

18       On May 7, 2012, Plaintiff filed an appeal and requested approval for his kosher meal.  The
19 appeal was denied as duplicative.

20                **III.**
21             **DISCUSSION**
22     **A.**       **Linkage Requirement**

23       Under section 1983, Plaintiff must link the named defendants to the participation in the
24 violation at issue.  Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009); Simmons
25 v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d
26 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Liability may not
27 be imposed under a theory of *respondeat superior*, and there must exist some causal connection
28 between the conduct of each named defendant and the violation at issue.  Iqbal, 556 U.S. at 676-77;

Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Moss v. U.S. Secret Service, 711 F.3d 941, 967-68 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

### B. Free Exercise of Religion

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85.

Plaintiff has sufficiently alleged his religious beliefs include weekly group worship Saturdays, observance in an open forum for the seven high holy days with includes two special religious even meals is root in his Messianic Jewish faith and a sincerely held belief. Plaintiff states a First Amendment claim against Defendants Jerald Sharon, Rosa Guembe, Kathleen Allison, Ralph Diaz, D. Foston, Darryl Heterbrink, R. Hall, Jose D. Ojeda, J.D. Lozano for denial of religious practices from November 2009 to June 2012.

### C. Religious Land Use and Institutionalized Persons Act (RLUIPA)

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution …, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest;
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under Turner." Shakur v.

Schriro, 514 F.3d 878, 888 (9th Cir. 2008) (citing Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005)). The Supreme Court has noted "RLUIPA … protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Plaintiff states a cognizable RLUIPA claim against Defendants Jerald Sharon, Rosa Guembe, Kathleen Allison, Ralph Diaz, D. Foston, Darryl Heterbrink, R. Hall, Jose D. Ojeda, J.D. Lozano for the allegations stated with regards to Plaintiff's First Amendment claim.

### D. Equal Protection Clause

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class. Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

Plaintiff states a cognizable Equal Protection violation against Defendant Jerald Sharon for denial of the opportunity to receive reasonable accommodations as offered to similarly situated inmate religious groups.

### E. Due Process

Plaintiff makes repeated reference to the fact that prohibiting his First Amendment rights constitutes a violation of the Due Process Clause.

The Ninth Circuit has found that

> [t]o establish a violation of substantive due process …, a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the

7

more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims.

Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), overruled on other grounds by Unitherm Food Systems, Inc. v. Swift Eckrich, Inc., 546 U.S. 394 (2006); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).  In this case, the First Amendment and Equal Protection Clause of the Fourteenth Amendment "provides [the] explicit textual source of constitutional protection…." Patel, 103 F.3d at 874.  Therefore, the First Amendment and the Equal Protection Clause rather than the Due Process Clause of the Fourteenth Amendment govern Plaintiff's constitutional claims.

### F. Cruel and Unusual Punishment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir.

2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

///

Although Plaintiff makes references to the fact that he is the subject of cruel and unusual punishment, Plaintiff fails to set forth any factual allegations that give rise to a cognizable claim for the wanton and unnecessary infliction of pain in violation of the Eighth Amendment. Accordingly, Plaintiff fails to state a cognizable claim, and he will be granted leave to amend if he can do so.

### G. Inmate Appeals Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Plaintiff claim that his due process rights were violated by the handling and response of his grievances fails to give rise to an independent constitutional violation, and Plaintiff fails to state a cognizable claim.

## IV.
## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable First Amendment and RLUIPA claim against Defendants Jerald Sharon, Rosa Guembe, Kathleen Allison, Ralph Diaz, D. Foston, Darryl Heterbrink, R. Hall, Jose D. Ojeda, J.D. Lozano, and a cognizable Equal Protection Claim against Defendant Jerald Sharon. However, Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"

complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims found to be cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and Defendants, and will forward Plaintiff the necessary summons and USM-285 forms for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only on the claims found to be cognizable herein; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **February 26, 2014**

UNITED STATES MAGISTRATE JUDGE