UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRE'ID O.I. HODGES,<br><br>  Plaintiff,<br><br>  v.<br><br>JERALD SHARON, et al.,<br><br>  Defendants. | Case No.: 1:13-cv-00654-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF Nos. 20, 21] |

Plaintiff Tyre'Id O.I. Hodges is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

This action is proceeding on Plaintiff's complaint filed May 6, 2013, against Defendants Kathleen Allison, Ralph Diaz, Jerald Sharon, Rosa Guembe, D. Foston, Darryl Heterbrink, R. Hall. Jose D. Ojeda, and J.D. Lozano under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA) for alleged violations of his civil rights related to his ability to worship as Messianic Jew and participate in religious activities at the California Substance Abuse and Treatment Facility.

On August 18, 2014, Defendants Diaz, Lozano, Guembe, Hetebrink, Sharon, Ojeda, Hall, and Allison filed a motion to dismiss Plaintiff RLUIPA claim to the extent he seeks damages thereunder.

1

On September 10, 2014, Defendant Foston joined the motion to dismiss filed on August 18, 2014.

Plaintiff filed an opposition to Defendants' motion on September 29, 2014.

## II.

## DISCUSSION

### A.     Motion to Dismiss Standard Under Rule 12(b)(6)

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted), *cert. denied*, 132 S.Ct. 1762 (2012).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

### B.     Allegations of Complaint

Plaintiff contends that Defendants have violated his right to freedom of religion, including religious dietary beliefs and religious scruples.

///

On October 23, 1998, Plaintiff was transferred to CSATF and is currently housed in Facility A Building 2. In 1995, Plaintiff adopted the beliefs of Messianic Judaism, and from 1995 to 2009, he was not able to practice his faith in an open forum. In November 2009, the Messianic Jewish members were afforded the opportunity to have use of the Facility Chapel but without a Messianic Jewish Rabbi, no Messianic Jewish prayer books, no bibles, no prayer shawls, no skull caps, or Messianic Jewish CDs or DVDs. Plaintiff also requested to have kosher meals provided for the specific Holy Days and daily kosher diet, but was denied by Chaplain Sharon.

On August 3, 2010, Plaintiff filed an inmate appeal. On August 27, 2010, Plaintiff was interviewed by Rosa Geumbe (the Catholic Chaplain) who was being consulted by Jerald Sharon (Jewish Chaplain). The appeal was partially granted at the first level, and Plaintiff was allowed to worship on Saturdays, from Friday sundown to Saturday morning with services on Saturday morning, and the Seven Jewish "Holy Days" which was already permitted under the prison regulations. Plaintiff was denied request to have Messianic Judaism be considered under the Jewish category, kosher meals for Holy Days and daily consumption, and relief from work assignments on Holy Days.

Plaintiff appealed to the second level of review. On June 20, 2012, the appeal was denied by D. Foston (Chief Inmate Appeals).

On October 25, 2010, Plaintiff filed an appeal and requested permission to hold a Chanukah religious meal on December 3, 2010, as the second religious meal of the year. On November 6, 2010, Plaintiff was interviewed by Heterbrink (Protestant Chaplain). Plaintiff's request was refused because he did not meet the time guidelines.

On January 28, 2010, the appeal was partially granted at the second level by Warden Allison stating permission to have a Christmas meal was moot, and at the meal on January 11, 2011, Messianic Jewish believers were required to eat with the traditional Christians and were not provided a kosher meal.

On or about September 2, 2011, Plaintiff received a response from the Director's level of review, D. Foston. It was found that Messianic Jewish inmates expressed a sincere desire to celebrate both Yom Kippur and Passover with a special meal in accordance with their sincerely held religious

beliefs. The requirement that the Jewish join the traditional Christian in celebrating Christmas and Easter is contrary to their expressed beliefs that those two holidays are pagan and as such, they have no wish to celebrate them. The matter was referred to CSATF's Religious Review Committee for consideration of Plaintiff's request.

Acting Warden Allison committed insubordination by ignoring the direct orders given by D. Foston. She stated that when Jewish feasts are celebrated Messianic Jewish inmates will be served regular meals, however, this is contrary to Plaintiff's sincerely held relief beliefs.

Jewish Chaplain Sharon continued to deny Plaintiff's request for kosher meals to be served to the Messianic Jewish group during the Passover week.

On December 5, 2010, Plaintiff filed an appeal and requested a Chanukah special religious meal, which was to be the last High Holy meal of the year.

On January 17, 2011, Plaintiff was interviewed by J. Sharon. Plaintiff was denied attendance to the Chanukah religious meal by Defendant Sharon because Messianic Jews such as Plaintiff are not considered to be Jewish.

On January 27, 2011, Plaintiff resubmitted the appeal. On or about April 19, 2011, Plaintiff received a second level response to his appeal. In the second level response, Appeals Coordinator, R. Hall, made note in the summary that Plaintiff was "not Jewish [and] not eligible for the Chanukah meal." The appeal was ultimately denied by K. Allison.

On April 25, 2011, Plaintiff submitted an appeal to the Directors level of review. On or about August 26, 2011, it was determined that "the event in question was provided for inmates of the traditional Jewish faith and not of the Messianic Jewish faith. But, he goes on to say that any inmate may request a special religious event through an institutional Chaplain for his particular faith, which is entirely contradictory, seeing how that this is the very reason for submitting the appeal in the first place."

On December 27, 2010, Plaintiff along with 15 other members of the Messianic Jewish group, filed an appeal. It was requested that Plaintiff be provided time in the main chapel area from 9:00 to 11:00 a.m. on Saturday.

///

On December 20, 2010, Plaintiff was interviewed by Jose D. Ojeda, and he contended that religious services for Messianic Jewish inmates and Native American inmates housed at Facility G had been scheduled at the same time in the chapel library on the first and third Saturdays of the month from 1200 to 1400 hours. Plaintiff explained that the entire situation had become volatile and tense. Plaintiff was advised that if he withdrew the appeal he could be given the first and third Saturdays of the month. However, Plaintiff refused to sign-off on the appeal, he only gave his group one day per month.

On February 6, 2011, Plaintiff re-submitted his appeal. On April 5, 2011, he received a second level response. Plaintiff requested that a religious review committee review his request to allow Messianic Jewish inmates to worship and congregate in the chapel on Saturday from 0900 to 1100 hours. Plaintiff's appeal was granted in that the religious review committee would review his request.

On April 12, 2011, Plaintiff filed a further appeal.

On or about September 10, 2011, the appeal was denied.

On August 29, 2011, Plaintiff requested a "breaking our fast" religious meal for Yom Kippur. On October 12, 2011, Plaintiff was interviewed regarding the appeal in which he and others expressed a sincere desire to celebrate both Yom Kippur and Passover with a special religious meal.

Plaintiff submitted a further appeal on October 30, 2011. On June 30, 2012, Plaintiff received a response from the director's level and his appeal was denied.

On February 20, 2012, Plaintiff filed an appeal requesting "Passover" special religious meal for Messianic Jewish fellowship. Plaintiff's appeal was partially granted.

On May 7, 2012, Plaintiff filed an appeal and requested approval for his kosher meal. The appeal was denied as duplicative.

**C.     Claim for Damages Under the Religious Land Use and Institutionalized Persons Act**

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution …, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-

5

(1) is in furtherance of a compelling government interest;

(2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.  RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under Turner."  Shakur v. Schriro, 514 F.3d 878, 888 (9th Cir. 2008) (citing Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005)).  The Supreme Court has noted "RLUIPA … protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Defendants move for dismissal of Plaintiff's claim for damages under RLUIPA, based on the Ninth Circuit's decision in Wood v. Yordy, 753 F.3d 899 (9th Cir. 2014).  Subsequent to this Court's service order, the Ninth Circuit held definitively in Woods that a RLUIPA claim may not be maintained against prison officials in their individual capacity, and therefore, a claim may only proceed under RLUIPA for injunctive relief against Defendants acting within their official capacity.  Id. at 904; see also Sossamon v. Texas, __ U.S. __, __, 131 S.Ct. 1651, 1655 (2011); Alvarez v. Hill, 667 F.3d 1061, 1063 (9th Cir. 2012) (money damages are not available under RLUIPA against the state or state officials sued in their official capacities).

In the complaint, Plaintiff indicates that he is suing Defendants for injunctive relief and damages.  (Compl. at 1; ECF No. 1.)  Based on the present state of the law, Plaintiff may only proceed in this action against Defendants in their official capacity based on a request for injunctive relief.  Contrary to Plaintiff argument, this Court must apply the current law to any and all cases presently before it, and all cases arising prior to and subsequent to the announcement of the new rule.  See Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97-98 (1993) (when a case does not "'reserve the question whether its holding should be applied to the parties before it' … an opinion announcing a rule of federal law … must be 'read to hold … that its rule should apply retroactively to the litigants then before the Court.'"); see also James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 539, 543-544 (1991).  Accordingly, Defendants' motion to dismiss Plaintiff's claim for damages under RLUIPA must be granted.

## III.

## RECOMMENDATION

Based on the foregoing,

IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss Plaintiff's claim for monetary damages under RLUIPA be GRANTED.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 22, 2014**

UNITED STATES MAGISTRATE JUDGE