# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRE'ID O.I. HODGES, | Case No. 1:13-cv-00654-DAD-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JERALD SHARON, et al., | (ECF No. 41, 51-53) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Tyre'id O.I. Hodges is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendants' motion for summary judgment which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons set forth herein, the Court recommends that Defendants' motion for summary judgment be granted in part and denied in part.

## I.

## PROCEDURAL HISTORY

Plaintiff filed this action on May 6, 2013. (ECF No. 1.) On February 26, 2014, an order issued finding that Plaintiff had stated cognizable claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") against Defendants Jerald Sharon, Rosa Guembe, Kathleen Allison, Ralph Diaz, D. Foston, Darryl Heterbrink, R.

Hall, Jose D. Ojeda, and J. D. Lozano, and a cognizable Equal Protection Claim against Defendant Jerald Sharon.  (ECF No. 9.)  Plaintiff was ordered to either file an amended complaint or notify the Court that he was willing to proceed on those claims found to be cognizable in the February 26, 2014 order.  (Id. at 9-10.)  On this same date, Plaintiff filed a first amended complaint.  (ECF No. 10.)  On March 10, 2014, Plaintiff notified the Court that he wanted to proceed on those claims found to be cognizable in the February 26, 2014 order, and requested that the first amended complaint be disregarded.  (ECF No. 11.)  On March 26, 2016, an order issued striking the first amended complaint.  (ECF No. 12.)

Defendants filed a motion to dismiss on August 18, 2014 which was granted on October 22, 2014, and Plaintiff's claim for monetary damages under RLUIPA was dismissed.  (ECF Nos. 20, 28.)

On December 30, 2015, Defendants filed the instant motion for summary judgment. (ECF No. 41.)  After receiving several extensions of time, Plaintiff filed an opposition on February 24, 2016.[1]  (ECF Nos. 51-53.)

## II.

## LEGAL STANDARD

### A.    Motion for Summary Judgment

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

---

[1] In his opposition to the motion for summary judgment Plaintiff includes his prior motion for appointment of counsel and requests that the Court be lenient as he is not literate in the law.  Plaintiff's motion for appointment of counsel was denied on January 26, 2016, without prejudice.  (ECF No. 46.)  In the order, Plaintiff was advised that he was not precluded from renewing his motion for appointment of counsel if the case survives summary judgment. Accordingly, Plaintiff is advised that if he files a motion for appointment of counsel, circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel.  In determining if exceptional circumstances exist to appoint counsel in the action, the Court considers "whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.' " Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); ).  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009); Harrington v. Scribner, 785 F.3d 1299, 1309 (9th Cir. 2015) (citations omitted).

In this instance, Plaintiff has alleged that he is legally blind.  However, Plaintiff did not address the extent of his vision problems, whether they are correctable with corrective lenses, and how his vision will affect his ability to present his case at trial.  These issues should be addressed if a renewed motion for appointment of counsel is filed.

omitted); <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011).   Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case...."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).   Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.   Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).   The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty.</u>, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

**B.     Religious Land Use and Institutionalized Persons Act**

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden

on the religious exercise of a person residing in or confined to an institution, unless the burden furthers a compelling governmental interest, and does so by the least restrictive means." Cutter v. Wilkinson, 544 U.S. 709, 712 (2005) (internal punctuation omitted) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).   Religious exercise includes "any exercise of religion, whether or not compelled by or central to, a system of religious belief." Cutter, 544 U.S. at 715 (quoting 42 U.S.C. § 2000cc-5(7)(A)).   In enacting RLUIPA, Congress replaced the "legitimate penological interest" standard with the " 'compelling governmental interest' and 'least restrictive means' tests codified at 42 U.S.C. § 2000cc–1(a)." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).

Section 3 applies to state run institutions such as prisons. Cutter, 544 U.S. at 722 (citing 42 U.S.C. § 2000cc-1(a)).   RLUIPA does not elevate accommodation of religion over an institutions need to maintain order and safety. Cutter, 544 U.S. at 723.   In enacting RLUIPA, the legislature expected courts to apply the standards of RLUIPA with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. 709, 723 (2005) (citations omitted).

The inmate bears the initial burden of presenting evidence to demonstrate a prima facie claim that the conditions he is objecting to constitute a substantial burden on the exercise of his religious beliefs.   Warsoldier, 418 F.3d at 994.   If the inmate establishes the prima facie existence of a substantial burden on exercise of his religious beliefs, then the defendants bear the burden of proving that any substantial burden on the exercise of the inmate's religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means for furthering that compelling governmental interest. Id. at 995.   RLUIPA is to be broadly construed in favor of protecting an inmate's right to exercise his religious beliefs. Id.

"[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise. Warsoldier, 418 F.3d at 995 (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir.2004)).   The Supreme Court has also found a substantial burden "where the state denies an important benefit because of conduct

mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Warsoldier, 418 F.3d at 995 (quoting Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707, 717–18 (1981)).

RLUIPA provides a safe harbor provision by which the government entity may avoid liability under RLUIPA "by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden." 42 U.S.C. 2000cc-3(e). While the Court does not find any published Ninth Circuit case construing this provision, courts have interpreted it according to its ordinary meaning. Forter v. Geer, 868 F.Supp.2d 1091, 1098 (D. Or. 2012), aff'd, 536 F. App'x 724 (9th Cir. 2013).

### III.

### ALLEGATIONS IN COMPLAINT

On October 23, 1998, Plaintiff was transferred to the California Substance Abuse Treatment Facility ("CSATF") and is currently housed in Facility A Building 2. (Compl. ¶ 22, ECF No. 1.) Although Plaintiff had been born Jewish, prior to his incarceration he had practiced Hebrew Christianity. (Id.) In 1995, Plaintiff adopted the beliefs of Messianic Judaism, and from 1995 to 2009, he was not able to practice his faith in an open forum. (Id.) In November 2009, the Messianic Jewish members were afforded the opportunity to have use of the Facility Chapel but without a Messianic Jewish Rabbi, no Messianic Jewish prayer books, no bibles, no prayer shawls, or skull caps, or Messianic Jewish CDs or DVDs. (Id.) Plaintiff also requested to have kosher meals provided for the specific Holy Days and a daily kosher diet, but the request was denied by Defendant Sharon (Jewish Chaplain) after a lengthy interview. (Id.)

On August 3, 2010, Plaintiff filed an inmate appeal requesting that his religious designation be made Messianic Judaism. (Id.) Plaintiff sought to have Messianic Judaism be listed under the Jewish category and be officially endorsed by the prison and the California Department of Corrections and Rehabilitation ("CDCR"). (Id.) Plaintiff also sought to have specified days for Messianic Jewish services, kosher religious meals, to be excused from work

for religious observances, and noted that a Messianic Jewish rabbi was required for religious services.  (Id.)

On August 27, 2010, Plaintiff was interviewed by Defendant Guembe (the Catholic Chaplain) who was being consulted by Defendant Sharon.  (Id.)  The appeal was partially granted at the first level, and Plaintiff was allowed to worship on Saturdays, from Friday sundown to Saturday morning with services on Saturday morning, and the Seven Jewish "Holy Days" which was already permitted under the prison regulations.  (Id.)  Plaintiff was denied the request to have Messianic Judaism be considered under the Jewish category, kosher meals for Holy Days and daily consumption, and relief from work assignments on Holy Days.  (Id.)

Plaintiff appealed to the second level of review.  (Id.)  On June 20, 2012, the appeal was denied by Defendant Foston (Chief Inmate Appeals).  (Id.)

On October 25, 2010, Plaintiff filed an appeal and requested permission to hold a Chanukah religious meal on December 3, 2010, as the second religious meal of the year.  (Id. at ¶ 23.)  On November 6, 2010, Plaintiff was interviewed by Defendant Heterbrink (Protestant Chaplain).  (Id.)  Plaintiff's request was refused because he did not meet the time guidelines because he had submitted his request too late and did not have a proposed menu, although Plaintiff contends that the appeal was timely and included a proposed menu.  (Id.)

On January 28, 2010, the appeal was partially granted at the second level by Defendant Allison.  (Id.)  At the meal on January 11, 2011, Messianic Jewish believers were required to eat with the traditional Christians and were not provided a kosher meal.  (Id.)  Plaintiff submitted a third level appeal on February 1, 2011.  (Id.)

On or about September 9, 2011, Plaintiff received a response from the director's level of review.  (Id.)  It was found that Messianic Jewish inmates expressed a sincere desire to celebrate both Yom Kippur and Passover with a special meal in accordance with their sincerely held religious beliefs.  (Id.)  It was found that the requirement that the Jewish join the traditional Christian in celebrating Christmas and Easter is contrary to their expressed beliefs that those two holidays are pagan and as such, they have no wish to celebrate them.  (Id.)  The matter was referred to CSATF's Religious Review Committee ("RRC") for consideration of Plaintiff's

1  request.  (Id.)

2  Defendant Allison ignored the modification order and stated that when Jewish feasts are

3  celebrated Messianic Jewish inmates will be served regular meals and added to Jewish meals,

4  which is contrary to Plaintiff's sincerely held relief beliefs.  (Id.)  Defendant Sharon continued to

5  deny Plaintiff's request for kosher meals to be served to the Messianic Jewish group during the

6  Passover week.  (Id.)

7  On December 5, 2010, Plaintiff filed an appeal and requested a Chanukah special

8  religious meal, which was to be the last High Holy meal of the year.  (Id. at ¶ 24.)  On January

9  17, 2011, Plaintiff was interviewed by Defendant Sharon.  (Id.)  Plaintiff was denied attendance

10  to the Chanukah religious meal by Defendant Sharon because Messianic Jews such as Plaintiff

11  are not considered to be Jewish.  (Id.)  However, Defendant Sharon allowed four other Messianic

12  Jewish inmates to attend the Chanukah service.  (Id.)

13  On January 27, 2011, Plaintiff submitted the appeal to the second level of review.  (Id.)

14  On or about April 19, 2011, Plaintiff received a second level response to his appeal.  (Id.)  In the

15  second level response, Defendant Hall, made note in the summary that Plaintiff was "not Jewish

16  [and] not eligible for the Chanukah meal."  (Id.)  The appeal was ultimately denied by Defendant

17  Allison.  (Id.)

18  On April 25, 2011, Plaintiff submitted an appeal to the director's level of review.  (Id.)

19  On or about August 26, 2011, Plaintiff received the director's level response which stated that

20  the event in question was provided for inmates of the traditional Jewish faith and not of the

21  Messianic Jewish faith and that any inmate may request a special religious event through an

22  institutional Chaplain for his particular faith.  (Id.)  The appeal was denied.  (Id.)

23  On December 27, 2010, Plaintiff, along with 15 other members of the Messianic Jewish

24  group, filed an appeal.  (Id. at ¶ 26.)  On December 20, 2010, Plaintiff was interviewed by

25  Defendant Ojeda, and Plaintiff contended that religious services for Messianic Jewish inmates

26  and Native American inmates housed at Facility G had been scheduled at the same time in the

27  chapel library on the first and third Saturdays of the month from 1200 to 1400 hours.  (Id.)

28  Plaintiff explained that the entire situation had become volatile and tense the prior week.  (Id.)  It

was requested that Plaintiff be provided time in the main chapel area from 9:00 to 11:00 a.m. on Saturday.  (Id.)  Plaintiff was advised that if he withdrew the appeal he could be given the first and third Saturdays of the month.  (Id.)  However, Plaintiff refused to sign-off on the appeal, and Defendant Ojeda only gave his group one day per month.  (Id.)  The appeal was partially granted. (Id.)

On February 6, 2011, Plaintiff submitted his appeal for second level review.  (Id.)  On April 5, 2011, he received a second level response.  (Id.)  Appeals Coordinator Gomez attached a copy of the schedule posted on the chapel door which showed that Messianic Jewish inmates were not listed on the worship schedule on Saturday mornings and concluded that a modification order should be granted stipulating that the RRC review the request to allow Messianic Jewish inmates to worship and congregate in the chapel on Saturday from 0900 to 1100 hours.  (Id.)

On April 12, 2011, Plaintiff submitted his appeal to the director's level.  (Id.)  On or about September 10, 2011, the appeal was denied by Defendant Foston because the request had been granted at the second level.  (Id.)

On August 29, 2011, Plaintiff requested a "breaking our fast" religious meal for Yom Kippur.  (Id. at ¶ 27.)  On October 12, 2011, Plaintiff was interviewed by Defendant Ojeda regarding the appeal in which he and others expressed a sincere desire to celebrate both Yom Kippur and Passover with a special religious meal.  (Id.)  The appeal was granted and Plaintiff was to be provided a religious meal during the month of December 2011 since Yom Kippur had already passed.  (Id.)  The request for kosher meals and kosher items were denied.  (Id.)  Plaintiff submitted the appeal to the second level on October 30, 2011.  (Id.)  On January 2, 2012, Plaintiff's appeal was denied stating that Messianic Jews have not been approved for kosher meals by the Jewish chaplain.  (Id.)  Plaintiff submitted the appeal to the director's level and on June 30, 2012, Plaintiff received a response from Defendant Lozano that his appeal was denied because he failed to substantiate that staff at CSATF had failed to adhere to departmental guidelines regarding religious diets.  (Id.)

On May 5, 2012, Plaintiff filed an appeal requesting approval for kosher meals two times yearly for religious event meals.  (Id. at ¶ 28.)  Plaintiff also addressed being forced to defile

himself for the past four years because he was being refused daily kosher meals and two yearly kosher religious event meals. (Id.) Plaintiff first addressed the issue with Defendant Ojeda who informed him he needed to fill out a "Jewish Chaplain Verification Form". (Id.) Plaintiff filed out the form and was subsequently informed there was no Jewish rabbi on staff so no kosher meals were being approved. (Id.) Plaintiff was also informed that Messianic Jewish inmates were not being approved kosher meals and the policy was under review in Sacramento. (Id.) Plaintiff's appeal of the decision was cancelled as a duplicate appeal. (Id.)

On February 20, 2012, Plaintiff filed an appeal seeking a Passover special religious meal for 20 people to be held on April 7, 2012. (Id. at ¶ 29.) Plaintiff requested a Seder meal to include the kosher meal of the day, and kosher foods necessary to observe the Passover Seder: grape juice, Mitzvah, one egg, Cyanosis, romaine lettuce, bitter herbs and grape juice and Mitzvah for the entire week, and 20 copies of the Messianic Jewish Passover Haggadic. (Id.) On January 21, 2012 Plaintiff was interviewed by Defendant Ojeda who informed Plaintiff that Messianic Jews were to be provided with accommodations regarding Jewish celebrations but would be provided with regular, and not kosher meals. (Id.) Plaintiff submitted a second level appeal which was partially granted by Defendant Diaz on May 9, 2012. (Id.) Plaintiff submitted the appeal to the director's level and it was received back on August 16, 2012 cancelled as a duplicate appeal. (Id.) The response noted that the prior appeal had found that rejection of the request and the direction that Plaintiff join Christians in celebrating Christmas and Easter is contrary to Plaintiff's sincerely held religious beliefs. (Id.)

Plaintiff was informed by Defendant Ojeda that CDCR no longer provides special religious meals. (Id.)

On January 15, 2012, Plaintiff filed an appeal requesting that all Messianic Jews be allowed to worship in the chapel with Torah readings, singing, prayers and communion with grape juice and Matzah on Saturdays. (Id. at ¶ 30.) Defendant Ojeda concluded that there were no religious volunteers or chaplain staff to supervise the group on the day and time requested. (Id.) The group was provided evening chapel on Friday evenings every other week. (Id.) On March 26, 2012, Plaintiff received a second level response from Defendant Diaz stating that

1  Plaintiff was being accommodated with Friday worship services.  (Id.)  The response stated that

2  the schedule could not be modified until a Jewish chaplain is hired or volunteers are accepted.

3  (Id.)  The director's level response was received on July 30, 2012.  (Id.)  Defendant Lozano

4  stated that until a Jewish Chaplain was hired or volunteers were accepted the current schedule

5  would not be modified.  (Id.)

6        On January 29, 2012, Plaintiff filed an appeal requesting Messianic Jewish artifacts and a

7  religious vendor be added to the vendor list.  (Id.)  Plaintiff also requested that all Messianic

8  Jewish groups at the institution receive one bottle of kosher grape juice and one box of Matzah

9  with 20 4 oz. Kiddush cups every week for weekly Messianic Jewish service and receive daily

10 kosher meals.  (Id. at ¶ 31.)  Plaintiff was interviewed by Defendant Ojeda on February 24, 2012

11 who found that Messianic Jewish religious artifacts matched the items listed on the Jewish

12 vendor list.  (Id.)  It is a matter of fact that all Messianic Jewish believers use the same religious

13 artifacts as members of the Jewish faith.  (Id.)  Especially in the case of Plaintiff because he was

14 born Jewish.  (Id.)  The vendor "Jews for Jesus" was not added to the vendor list.  (Id.)  Plaintiff

15 submitted the appeal to the second level and director's level where it was cancelled as

16 duplicative.  (Id.)

17       Plaintiff contends that if he is transferred to another prison he would be required to sell

18 his religious property or send it home.  He states that all Messianic Jewish inmates should be

19 allowed to have the following tools on their person at all times:  one medal and chain; ten

20 spiritual audio tapes or CDs; ten spiritual books (soft cover only); two prayer shawls (Tallit); two

21 skull caps (Yarmulke); materials to make Yarmulke, if not ordering; one Mezuzah (plastic or

22 wood no metal); two ounces anointing oil (non-alcoholic/non-flammable); one set of 4 Tzitzit;

23 one Tfillin (leather rap with scroll box); two Katan (Tallit vest); and one Kiddush cup (plastic).

24 (Id. at pp. 24-25.)  Plaintiff seeks to have CDCR provide the following religious items to all

25 Messianic Jewish inmates throughout the CDCR: one complete Torah scroll; ten Messianic

26 Jewish Hebrew/English bibles (soft cover only); ten Messianic Jewish prayer books (soft cover

27 only); ten Messianic Jewish song books (soft cover only); two Shabbat lamp stands; Shabbat

28 candles (two per week); one Havdalah set (candle holder); two Havdalah candles; one Chanukah

1   menorah; Chanukah menorah candles (8 boxes); one rams horn (not to exceed 11 inches);
2   Passover plate and matzah; and Kiddush cup for each member.  (Id. at p. 26.)

3        Plaintiff seeks the following injunctive relief: 1) a religious designation for Messianic
4   Judaism to be officially accepted and endorsed by all CDCR; 2) CDCR hire a Messianic Jewish
5   chaplain for all designated institutions; 3) CDCR allow all Messianic Jewish inmates throughout
6   CDCR to have the Passover plate and matzah, Kiddush cup, matzah and grape juice for Passover
7   and weekly Shabbat services, and Messianic Jewish DVD's or CDs; 4) CDCR allow all
8   Messianic Jewish inmates throughout CDCR to use his designated vendors; 5) all Messianic
9   Jewish inmates to be allowed to worship on Saturday mornings; 6) all Messianic Jewish inmates
10  be allowed to attend two kosher special religious meals per year; 7) all Messianic Jewish inmates
11  be given three kosher meals daily; 8) Plaintiff be provided with three kosher meals daily until a
12  decision is made in this suit; 8) Plaintiff be provided with two kosher special religious meals per
13  year until decision is made in this suit; 9) Plaintiff not be transferred until a decision is made in
14  this suit; 10) Plaintiff be allowed to worship on Saturday mornings; 11) all Messianic Jewish
15  inmates housed in Arizona for CDCR be allowed to stay on the kosher diet program and be
16  allowed to continue having Saturday morning services; 12) Inmate Gary Poucher be granted
17  Amicus Curie status because Plaintiff is legally blind and cannot represent himself without
18  assistance; and 13) the Court appoint an attorney for Plaintiff because he is blind and unable to
19  adequately represent himself without assistance.  (Id. at pp. 29-31.)

20  **IV.**

21  **UNDISPUTED FACTS**

22       1.    California Code of Regulations, title 15, section 3210, governs the establishment
23  of religious programs at CSATF.

24       2.    CSATF officials must make every reasonable effort to provide for the religious
25  and spiritual welfare of all interested inmates, including, but not limited to, affording inmates a
26  reasonable accommodation to attend a scheduled religious service if they are unable to do so due
27  to conflicting work/education assignments.

28       3.    Reasonable accommodation may include, but is not limited to, modified work

schedule, use of accrued time or allowable breaks, granting of a job/assignment change, changes of regular days off, etc.

4.      Use of reasonable accommodation shall in no way adversely impact an inmate's credit earning status.

5.      Depending upon the number of inmates of the various faiths, chaplains may be employed or their services may be accepted on a nonpaid volunteer basis.

6.      When feasible, separate space for services of the faith groups represented by a substantial number of inmates shall be provided.

7.      However, in some facilities, such as camps, it is necessary for the various faith groups to share such space as is available for religious services.

8.      Reasonable time and accommodation must be allowed for religious services in keeping with facility security and other necessary institutional operations and activities.

9.      Insofar as possible, other facility activities shall be planned so as not to conflict with or disrupt scheduled religious services.

10.     A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a RRC for review and consideration.

11.     The RRC is comprised of designated chaplains, and a correctional captain or their designee.

12.     Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution.

13.     Chaplain Alvarez schedules religious services for the various faith groups on Facility A at CSATF.

14.     Chaplain Alvarez also oversees the Messianic Jewish bible study on Facility A at CSATF.

15.     Chaplain Alvarez knows Plaintiff, and is familiar with Plaintiff because Plaintiff is an inmate assigned to Facility A at CSATF, and Plaintiff actively participates in the Messianic

Jewish services and bible study on Facility A at CSATF.

16.    Plaintiff has access to Messianic Jewish religious services and bible study.

17.    Plaintiff and the Messianic Jewish inmates also have access to religious artifacts that are available to the Messianic Jewish group to use during religious services.

18.    CSATF purchased certain religious artifacts for the Messianic Jewish group to use during "Shabbat" services.[2]

19.    The Messianic Jewish inmates use these artifacts, and the artifacts have been available to them since April of 2012.

20.    These artifacts are: Torah Bible; Shabbat Candle Holder; Menorah/Shabbat Candles; Kiddush cup & grape juice (provided as needed) (Aleph Institute always donates the juice and Matzah Crackers for special holidays); and Passover plate and Matzah cover.

21.    These artifacts are specifically allowed by CSATF's regulations and identified as artifacts that are provided by CSATF for the Messianic Jewish inmates to utilize during their services.

22.    The regulations, which have been in place for well over a year, allow Messianic Jewish inmates to purchase and possess, or have access to, the following items:

a.    Religious medal and chain (must be a set).  Medal not to exceed 2" x 2" and chain not to exceed 18" in length (1);

b.    Spiritual Audio Tapes or CDs (2);

c.    Spiritual Books-Soft Cover (5);

d.    Prayer Shawl/Tallit (1);

e.    Yarmulka/Kippa (Skull Cap) (2);

---

[2] Plaintiff contends that these are not "Messianic Jewish" artifacts, but are comprised of mostly Christian and traditional Jewish items.  (ECF No. 52 at 1-2.)  Plaintiff also contends that the statement is false as he was informed in response to a request for interview that "CDCR/[C]SATF does not purchase religious artifacts."  (Id. at 2.)  Plaintiff states that the items provided have been donated by the Aleph Institute to the Traditional Jewish inmates.  (Id. at 3.)  However, it is immaterial whether the items are purchased or donated and Plaintiff does not dispute that the items are available for use by the Messianic Jewish inmates.

The declarations submitted by Defendant as well as Plaintiff demonstrate that there is a Messianic Jewish cabinet in which the articles are available for the Messianic Jewish inmates to use during services.  (Decl. of D. Soltero, ECF No. 53 at 30-31; Decl. of J. De Luca, id. at 31-32; Decl. of J. Duran, id. at 33-34; Decl. of R. Butte, id. at 35-36; Decl. of F. Orsburn, Id. at 37-38.)

f.      Materials to make Yarmulka if not ordering (2);

g.      Mezuzah (plastic or wood, no medal or porcelain) 4" X 1" in diameter (1);

h.      Non-alcoholic/non-flammable oil (2 oz.);

i.      Katan/Tallit-Vest (1);

j.      Complete Hebrew Torah Scroll (1);

k.      Menorah (1);

l.      Shabbat Candle Holder (1);

m.      Menorah/Shabbat Candles (7);

n.      Havdala Set & Candles (1);

0.      Passover Plate & Matzha Cover (1);

p.      Elijah's Cup (Ceramic) (1);

q.      Kiddush Cup & Grape Juice (as needed).

23.     The CSATF regulations also allow Plaintiff and the Messianic Jewish inmates to purchase approved religious items from the following vendors:

a.      Zola Levitt Ministries;

b.      First Fruits of Zion;

c.      Jewish Jewels;

d.      Messianic Jewish Resources Catalog.

24.     Messianic Jewish inmates wishing to purchase approved religious items may do so from these vendors by filling out the Package Request form.

25.     Plaintiff has been approval to receive kosher meals, and has had that permission since February 13, 2014.

26.     Plaintiff and the other Messianic Jewish inmates are scheduled for religious services in the Facility A main chapel for their Shabbat services on Saturdays from 10:00 a.m. to 11:00 a.m. during normal programing at the prison.

27.     Because this is a prison, these services may be suspended from time to time during emergency "lock downs."

28.     Otherwise, the Messianic Jewish group, including Plaintiff, is schedule for holy

14

1  day religious services on Saturdays from 10:00 a.m. to 11:00 a.m.

2      29.    The Messianic Jewish inmates, and Plaintiff, have had use of the Facility A main

3  chapel and the religious artifacts identified above for well over a year.

4      30.    Chaplain Haroun supervises Plaintiffs and the Messianic Jewish inmates' Shabbat

5  services on Saturdays.

6      31.    Chaplain Haroun arrives at the chapel on Saturdays and provides the Messianic

7  Jewish groups with their religious artifacts for use during their Shabbat services in the Facility A

8  main chapel.

9      32.    Chaplain Haroun lights the candles as needed for them, and then the Messianic

10  Jewish group conducts their ceremony.

11      33.    Chaplain Haroun's office is located in between the main chapel and the chapel

12  library, and he is available to assist the Messianic Jewish group to prepare for their services as

13  needed.

14      34.    The Messianic Jewish group, including Plaintiff, is also scheduled to use the

15  Facility A chapel library for Messianic Jewish religious study on Thursdays from 10:00 a.m. to

16  12:00 p.m.

17      35.    These Thursday study sessions for the Messianic Jewish group have also been

18  schedule on Facility A for well over a year.

19      36.    Also, the Facility A chapel library contains a Torah for the Messianic Jewish

20  inmates' use during religious study, and the library contains several Messianic-Jewish specific

21  religious texts and CDs that were donated by outside groups for their use during religious study.

22      37.    Plaintiff is scheduled for inclusion in the Passover meals at CSATF.

23      38.    Religious groups within CSATF are allowed two special religious meals a year.

24      39.    This Passover meal qualifies as one of those special religious meals.

25      40.    Plaintiff is also scheduled for inclusion in the Yom Kippur celebration at CSATF.

26      41.    Plaintiff was also scheduled for inclusion in the 2015 Hanukkah celebration at

27  CSATF.

28      42.    Plaintiff has been incarcerated within CSATF for the past sixteen years.

43.     Plaintiff cannot be transferred out of CSATF to another institution because of his medical condition.

**V.**

**DISCUSSION**

Defendants move for summary judgment on Plaintiff's claims for injunctive relief arguing that Plaintiff is not being denied a reasonable opportunity to practice his religion.

**A.     Plaintiff Can Not Prosecute this Action on Behalf of Other Inmates**

In his complaint, Plaintiff seeks system wide relief on behalf of all Messianic Jewish inmates within the CDCR.  Additionally, Plaintiff's opposition to the instance motions argues the entitlement to relief for all Messianic Jewish inmates in CDCR.  Defendants seek summary judgment and denial of Plaintiff's claim for injunctive relief on behalf of other inmates.

1.     <u>Plaintiff does not have standing to bring the claims of other inmates in this action</u>

Defendants move for summary judgment on the ground that Plaintiff does not have standing to bring the claims of other inmates.  Standing raises both constitutional and prudential concerns incident to the federal court's exercise of jurisdiction.  <u>Coalition of Clergy, Lawyers, and Professionals v. Bush</u>, 310 F.3d 1153, 1157 (9th Cir. 2002).  A prudential principle of standing is that normally a plaintiff must assert his own legal rights rather than those of third parties.  <u>Oregon v. Legal Services Corp.</u>, 552 F.3d 965, 971 (9th Cir. 2009); <u>Fleck and Associates, Inc. v. Phoenix</u>, 471 F.3d 1100, 1104 (9th Cir. 2006.)  In some circumstances a litigant may seek relief for third persons, however, the litigant must demonstrate 1) the litigant suffered an injury in fact; 2) that there is a close relationship between the litigant and the individual who possesses the right that the litigant is asserting; and 3) there is a hindrance to the individual's ability to assert his own rights.  <u>Coalition of Clergy, Lawyers, and Professionals</u>, 310 F.3d at 1163; <u>Fleck and Associates, Inc.</u>, 471 F.3d at 1105 n.3; <u>McCollum v. California Dep't of Corrections and Rehabilitation</u>, 647 F.3d 870, 878 (9th Cir. 2011).

In order to bring a claim for a third party, Plaintiff must show that the individual is unable to litigate his own claims due to mental incapacity, lack of court access, or other similar disability, and that he has some significant relationship with and is truly dedicated to the best

interests of the individual.  Coal. of Clergy, Lawyers, & Professors v. Bush, 310 F.3d 1153, 1159-60 (9th Cir. 2002).  While Plaintiff has demonstrated that he has suffered an injury in fact and has standing to bring claims on his own behalf, Plaintiff has not demonstrated that other Messianic Jewish inmates would be hindered in their ability to assert their own rights.  As this Court is well aware, the fact that an individual is in custody does not mean that he is unable to pursue litigation to enforce his federal rights.  See McCollum, 647 F.3d at 879 (denying third party standing and noting that inmates have the ability to assert their own rights).  This Court regularly addresses cases filed by inmates seeking to assert their federal rights while incarcerated.

Furthermore, Plaintiff is seeking to represent inmates at all CDCR institutions in California or housed by CDCR in Arizona.  No matter how friendly and sympathetic the litigant is to the cause of the individuals he seeks to represent, a petitioner without a significant relationship is less likely to know the best interests of the individual.  Coal. Of Clergy, Lawyers, & Professors, 310 F.3d at 1162.  Plaintiff has presented no evidence that he has a significant relationship with the individuals for whom he seeks relief.

Plaintiff has been housed at CSATF for the past sixteen years and the complaint contains no allegations that from which the Court could infer that he has a close relationship with inmates at all the institutions for which he is seeking relief.  While Plaintiff alleges that over the years he has been associated with inmates who are no longer housed at CSATF, Plaintiff presents no evidence on where these inmates with whom he has a close relationship are housed, or even if they are still in the custody of CDCR.  Plaintiff has not demonstrated that he has standing to assert the claims for any other specific inmate or all other Messianic Jewish inmates that are incarcerated in CDCR.

2.      A pro se inmate cannot represent anyone other than himself in an action

Also, "[a] litigant appearing in propria persona has no authority to represent anyone other than himself" in the action.  Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962); see also McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (privilege to appear without counsel is personal to the litigant).  Similarly, Federal Rule of Civil Procedure 23 requires that

1  the party representing a class must be able to fairly and adequately represent the interests of the

2  class.  Fed. R. Civ. P. 23(a).  The ability to protect the interests of the class depends on the

3  quality of counsel representing the class members.  Oxendine v. Williams, 509 F.2d 1405, 1407

4  (4th Cir. 1975).  The competence of a layman in representing himself is too limited to allow him

5  to risk the rights of others, therefore, an inmate proceeding without the assistance of counsel

6  cannot represent other inmates in a class action.  Oxendine, 509 F.2d at 1407; Cevallos v. City of

7  Los Angeles, 914 F.Supp. 379, 385 (C.D. Cal. 1996) (to fairly and adequately represent a class

8  of individuals the plaintiffs must be represented by counsel).  "This rule is an outgrowth not only

9  of the belief that a layman, untutored in the law, cannot 'adequately represent' the interests of the

10  members of the 'class,' but also out of the long-standing general prohibition against even

11  attorneys acting as both class representative and counsel for the class."  Huddleston v.

12  Duckworth, 97 F.R.D. 512, 514 (N.D. Ind. 1983).

13       Plaintiff cannot prosecute this action on behalf of other inmates and this action should be

14  proceeding only on Plaintiff's individual claims for all causes of action.  The Court recommends

15  that Defendants' motion for summary judgment on Plaintiff third party relief claims be granted.

16       Accordingly, Plaintiff's arguments and evidence regarding allegations beyond his

17  individual claims will not be considered or addressed on this motion for summary judgment.[3]

18  **B.**    **Injunctive Relief Under RLUIPA**

19       In determining whether government action is lawful under RLUIPA the Court must

20  consider: 1) whether Plaintiff has shown that his exercise of religion is at issue; 2) whether

21  Plaintiff is asserting a sincerely held religious belief; 3) whether the state's conduct substantially

22  burdens Plaintiff's religious exercise; and 4) if so, was the action taken in furtherance of a

23  compelling government interest and was narrowly tailored to that interest.  Rouser v. White, 630

24  F.Supp.2d 1165, 1181-86 (E.D. Cal. 2009).

25       Plaintiff has demonstrated that his exercise of religion is at issue in this action.

26  Defendants do not challenge that Plaintiff is asserting his sincerely held religious beliefs.

27
28  [3] Similarly, Plaintiff sets forth argument regarding his First Amendment and equal protection claims which are not raised in the current motion to dismiss.  Therefore, the Court shall not address Plaintiff's arguments as they apply to the First Amendment and equal protection claims.

1   Therefore, the Court considers the remaining steps in the analysis.

2       1.   Messianic Jewish Chaplain

3       Defendants move for summary adjudication on Plaintiff's claim to require CDCR to hire

4   a Messianic Jewish chaplain.  Plaintiff counters that he has requested that a Messianic Jewish

5   chaplain be employed, an ad be placed for a volunteer Messianic Jewish Chaplain, or that he be

6   sent to a Messianic Jewish seminary so he could receive a degree as a Messianic Jewish minister.

7   Plaintiff asserts that this shows he has set forth a good faith effort to find the least restrictive

8   means for CSATF to find a Messianic Jewish chaplain.

9       CDCR is not required to provide every religious sect or group within the prison system

10  with a chaplain.  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  The Ninth Circuit has held that to

11  impose a substantial burden on religious exercise under RLUIPA the conduct "must impose a

12  significantly great restriction or onus upon such exercise."  San Jose Christian College, 360 F.3d

13  at 1034.  "[A] burden is substantial under RLUIPA when the state denies an important benefit

14  because of conduct mandated by religious belief, thereby putting substantial pressure on an

15  adherent to modify his behavior and to violate his beliefs."  Shakur v. Schriro, 514 F.3d 878, 888

16  (9th Cir. 2008) (internal punctuation and citations omitted).

17      Plaintiff contends that the chaplains categorize him as Traditional Judaism or Christian

18  and do not recognize that Messianic Judaism is a separate religion and this has caused a

19  substantial burden on his religious exercise by denying him his religious artifacts and trying to

20  force him to participate in services with Traditional Jewish or Christian inmates.  Plaintiff asserts

21  that the Traditional Jewish religion is significantly different from the Messianic Jewish religion.

22  (ECF No. 52 at 5.)  While they celebrate the same holy days, Messianic Jews believe in and

23  worship Jesus as Son of God and God Himself.  (Id.)  Traditional Jews believe that Jesus was

24  just a man and the belief that he is God is repugnant to them.  (Id.)  Plaintiff also contends that

25  the Traditional Jewish services are conducted by inmate Richard Kirk who is engaged in an

26  active campaign of hostility toward the Messianic Jews because their beliefs are so different.

27  (Id. at 3.)  Plaintiff asserts that he cannot engage in a Messianic Jewish service in conjunction

28  with the Traditional Jewish inmates because he cannot worship his Lord and Savior.  (Id. at 5.)

Defendants have presented evidence that Messianic Jewish inmates may purchase and possess Messianic Jewish artifacts, are provided with chapel time, and are able to meet for group services.  Shabbat services are scheduled for Saturdays from 10:00 a.m. to 11:00 a.m. (U.F. 26.) Chaplain Haroun supervises the Shabbat services on Saturdays.  (U.F. 30.)  Chaplain Haroun provides the inmates with the religious artifacts for their services and lights candles as needed by the Messianic Jewish inmates.  (U.F. 33, 32.)  Chaplain Haroun's office is located between the main chapel and the chapel library and he is available to assist the Messianic Jewish inmates preparing for services as needed.  (U.F. 33.)  Chaplain Alvarez oversees the Messianic Jewish bible study on Thursdays between 10:00 a.m. and 12:00 p.m. (U.F. 14, 34.)  Plaintiff actively participates in the Messianic Jewish bible study and Shabbat services.  (U.F. 15, 16.)

In this instance, Defendants have presented evidence that Plaintiff has been provided with the ability to possess religious artifacts and attend religious services aided by a prison chaplain. However, Plaintiff declares due to the prison chaplains lack of understanding of the differences between Traditional and Messianic Judaism, Messianic Jewish inmates are being provided with Traditional Jewish religious artifacts for their worship services.  The Messianic Jewish artifacts differ from Traditional Jewish artifacts because they depict Messianic Jewish religious ideas. (ECF No. 53 at 9.)  All of the holy books and Torah scroll refer to Yeshua and His followers in some way.  (Id. at 22.)  Similarly, the religious implements have the Messianic Seal which is the Menorah, Star of David, and fish.  (Id.)  Plaintiff also contends that he is being required to participate with Traditional Jewish inmates in his high holy day services because the prison chaplains are not recognizing the difference between Traditional Judaism and Messianic Judaism.

Plaintiff has demonstrated a genuine issue of material fact exists regarding whether the failure to have a Messianic Jewish chaplain at CSATF has caused his religious exercise to be substantially burdened.  The Court recommends that Defendants' motion for summary judgment on Plaintiff's claim that the failure to provide a Messianic Jewish violates RLUIPA be denied.

2.    Religious Items

Plaintiff seeks to have CDCR allow him to possess certain religious items on his persona

and to provide certain religious items for corporate worship.  Defendants move for summary adjudication on the ground that Plaintiff is entitled under the regulations to have such items and has been allowed to fully practice his religion.  Plaintiff does not dispute that he is allowed under the regulations to have such items, but counters that he does not have all the requested items and seeks to have the items provided for him by CDCR.

While RLUIPA provides that the state cannot place a substantial burden on an inmate's religious exercise, it does not require the prison to pay for an inmate's religious accessories. Knows His Gun v. Montana, 866 F.Supp.2d 1235, 1240 (D. Mont. 2012).  "Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories." Cutter, 544 U.S. at 720 n.8; Abdulhaseeb v. Calbone, 600 F.3d 1301, 1320 (10th Cir. 2010) (RLUIPA does not require the government to affirmatively subsidize religion).  "RLUIPA is phrased in a way which prevents prison officials from substantially burdening the practice of religion[,] its text does not require the performance of affirmative acts, especially budget expenditures, in order to facilitate an inmate's religious practice." Pogue v. Woodford, No. CIVS051873 MCE GGHP, 2009 WL 2777768, at *7 (E.D. Cal. Aug. 26, 2009), report and recommendation adopted, No. 2:05CV01873 MCE GGHP, 2009 WL 3211406 (E.D. Cal. Sept. 30, 2009).

> If the rule were to the contrary, prisons would also have to fund any other religion facilitating request without which an inmate could claim a substantial burden: the construction of individual religious places of worship, the purchase of religious articles to be used in ceremonies, religious garments, religious publications and the like—all for the purpose of aiding an inmate in his practice of religion.  These items may be of great importance to one in religious practice, but there is a distinct line to be drawn between providing a service of general applicability, e.g., food, such that it does not burden the practice of religion, and requiring affirmative acts of prison officials to provide services or items having no basis in the essentials of prison life.  Moreover, there is similarly a distinction in requiring prison officials to construct a work schedule to permit attendance at religious ceremonies absent a compelling countervailing interest, and requiring the prison to satisfy all of one's religious requests regardless of their non-availability within prison grounds.

Id. at *8.  To the extent that the prison has provided some items for the Messianic Jewish inmates use in chapel, ["a] prison's voluntary decision to exceed RLUIPA's requirements should not subject it to further RLUIPA liability." Knows His Gun, 866 F.Supp.2d at 1241.

a.      **Personal Religious Artifacts**

Plaintiff seeks to be allowed the following tools on his person at all times:  one medal and chain; ten spiritual audio tapes or CDs; ten spiritual books (soft cover only); two prayer shawls (Tallit); two skull caps (Yarmulke); materials to make Yarmulke, if not ordering; one Mezuzah (plastic or wood no metal); two ounces anointing oil (non-alcoholic/non-flammable); one set of 4 Tzitzit; one Tfillin (leather rap with scroll box); two Katan (Tallit vest); and one Kiddush cup (plastic). (ECF No. 1 at pp. 24-25.)

Regulations have been in place for over a year that allows Messianic Jewish inmates to purchase and possess religious items.  (U.F. 22.)  There are regulations in place that allow Messianic Jewish inmates to purchase and possess a religious medal and chain, spiritual audio tapes or CDs, spiritual books, prayer shawl, Yarmulka/Kippa, Mezuzah, oil, Katan/Tallit vest, and a Kiddush cup.  (U.F. 22, ECF No. 53 at 19, 48, ECF No. 41-5 at 31-33, 35.)  Plaintiff does not dispute that he is allowed by the regulations to purchase and possess the requested items while at CSATF, but argues that there is no absolute guarantee that he will always be allowed to exercise his religious freedom in practical manner because the regulations allow the warden to determine the religious rights of the inmates.  Plaintiff contends that if he was moved to another institution he could be denied the right to have his personal religious items.

However, Plaintiff has been incarcerated at CSATF for the past 16 years.  (U.F. 42.)  While Plaintiff states that he plans to request a transfer to an institution closer to his daughter once this action is resolved, Plaintiff cannot be transferred to another institution due to his medical condition.  (U.F. 43.)  During his deposition Plaintiff conceded that "all visually impaired inmates can only be housed at [C]SAFT."  (ECF No. 41-1 at 29.)  Plaintiff's claims that he may be transferred to another institution are too speculative to rise to the level of a reasonable expectation that he could be subjected to the same action at another institution.  Dilley v. Gunn, 64 F.3d 1365, 1369 (9th Cir. 1995).

Plaintiff has not shown that there is any regulation, policy, or practice denying him access to religious artifacts that substantially burdens his religious exercise.  Plaintiff has not demonstrated that there is a genuine issue of material fact regarding his ability to purchase and

1  possess religious items.  Accordingly, Defendants' motion for summary judgment on this claim

2  should be granted.

3        **b.    Religious Artifacts for Corporate Worship Services**

4        Plaintiff seeks to have CDCR provide the following religious items for Messianic Jewish

5  inmates: complete Torah scroll; Messianic Jewish Hebrew/English bible (soft cover only);

6  Messianic Jewish prayer book (soft cover only); Messianic Jewish song book (soft cover only);

7  two Shabbat lamp stands; Shabbat candles (two per week); one Havdalah set (candle holder);

8  two Havdalah candles; one Chanukah menorah; Chanukah menorah candles (8 boxes); one rams

9  horn (not to exceed 11 inches); Passover plate and matzah; Kiddush cup, matzah and grape juice

10  for Passover and weekly Shabbat services, and Messianic Jewish DVD's or CDs.  (ECF No. 1 at

11  pp. 26, 27.)

12        Defendants present evidence that Plaintiff has access to religious artifacts that are

13  available to the Messianic Jewish inmates to use during their religious services and these artifacts

14  have been available for use since April 2012.  (U.F. 17, 19, 20, 36.)  There are regulations in

15  place that allow Messianic Jewish inmates to purchase and possess a complete Hebrew Torah

16  scroll, Menorah, Shabbat candle holder, Havdala set, candles, Passover plate and Matzha cover,

17  Elija's cup, Kiddush cup, and grape juice.  (U.F. 22, ECF No. 53 at 19, 48, ECF No. 41-5 at 31-

18  33, 35.)

19        Defendants have presented evidence that they have attempted to accommodate Plaintiff's

20  religious beliefs by providing items to be used by the Messianic Jewish inmates.  (U.F. 17.)

21  Plaintiff does not dispute that the religious items are available, but argues that they most of them

22  are either traditional Jewish items or Christian items and he wants Messianic Jewish items.

23  Plaintiff contends that the items contained in the Messianic Jewish cabinet are items that were

24  either taken from the Traditional Jewish group by Defendant Alvarez who told the Messianic

25  Jewish group to use them, were Christian items that were given to the Messianic Jewish group,

26  or are items Plaintiff received from Tree of Life Ministries.  (ECF No. 53 at 8-9.)  Plaintiff no

27  longer uses any of the items provided by Defendants because he considers them to be stolen from

28  the Jewish inmates.  (Id. at 26.)

While Defendants have presented evidence that religious artifacts have been provided for the Messianic Jewish inmates to use for corporate worship, they have not presented any evidence or argument regarding Plaintiff's allegation that the items which are available are not Messianic Jewish artifacts.  While it is clear that Defendants do not have to purchase Messianic Jewish religious artifacts for inmates, Cutter, 544 U.S. at 720 n.8; Abdulhaseeb, 600 F.3d at 1320, it is not clear what efforts, if any, must be made by the prison to accommodate the corporate worship needs of a religious group.

Plaintiff declares that Messianic Jewish artifacts are very hard to get because the group does not have the money to purchase them and they are unable to get anyone to donate them to a prison.  (ECF No. 52.)  While the Court does consider that the items provided may be a reasonable accommodation, Defendants have not addressed whether any attempt was made to obtain Messianic Jewish artifacts or if there is any requirement that they do so.

Plaintiff has submitted evidence to create a genuine issue of material fact as to whether Defendants have substantially burdened his exercise of religion by providing Traditional Jewish religious artifacts for his use in corporate worship.  The Court recommends that Defendants' motion for summary judgment on this claim be denied.

3.   Religious Vendors

Plaintiff seeks to require CDCR to allow use of his designated vendors.  Defendants contend that the CDCR has identified specific vendors from which Plaintiff can obtain Messianic Jewish religious items.  Plaintiff does not address the vendors in his opposition to the motion for summary judgment.

It is undisputed that CSATF regulations allow Plaintiff to purchase approved religious items from Zola Levitt Ministries; First Fruits of Zion; Jewish Jewels; and Messianic Jewish Resources Catalog.  (U.F. 23.)  Plaintiff has access to vendors from whom he can purchase religious items and has not offered any evidence that he is unable to purchase Messianic Jewish items from these vendors.  Further, three of these vendors are included on Plaintiff's list of requested vendors.  Plaintiff identified additional vendors from whom he wishes to purchase Messianic Jewish items in his complaint.  (ECF No. 1 at 30.)  However, Plaintiff has not

1   identified any religious items that he is unable to obtain through, or any other substantial burden

2   on his religious exercise by, being limited to these approved vendors.

3        Defendants have presented evidence that Plaintiff is able to purchase Messianic Jewish

4   items from approved vendors; and Defendants are not required to provide Plaintiff with a vendor

5   of his choice.  Davis v. Powell, 901 F.Supp.2d 1196, 1232 (S.D. Cal. 2012).  Plaintiff is seeking

6   additional accommodations beyond those already provided and has failed to show that his

7   religious exercise has been substantially burdened by the failure to include vendors in addition to

8   those approved.

9        The Court finds that Defendants' motion for summary judgment on the religious vendor

10   claim should be granted.

11       4.   Sabbat Worship

12        Plaintiff seeks to be able to worship on Saturday mornings.  Defendants contend that

13   Messianic Jewish inmates are scheduled for Saturday morning services in the Chapel.

14        According to Plaintiff's complaint, Jewish Messianic inmates have been afforded use of

15   the chapel facility since November 2009.  (ECF No. 1 at ¶ 22.)  Plaintiff filed an inmate appeal in

16   August 2010 requesting to be able to worship with services on Saturday mornings which was

17   partially granted as the service was already permitted under prison rules provided the services

18   were conducted under the supervision of a CSATF chaplain or approved volunteer.  (Id.)  On

19   April 5, 2011, an appeal filed by Plaintiff was granted at the second level and the RCR was to

20   review his request to allow Messianic Jewish inmates to meet in the chapel on Saturdays from

21   9:00 a.m. to 11:00 a.m.  (Id. at ¶ 26.)  Due to the lack of a chaplain to accommodate the request,

22   Plaintiffs were provided with services every other Friday night.  (Id. at ¶ 30.)

23        For over a year, the Messianic Jewish inmates have been scheduled to have religious

24   services in the Facility A main chapel on Saturdays from 10:00 a.m. to 11:00 a.m. during normal

25   programing at the prison.  (U.F. 26, 28, 29.)  Chaplain Haroun is present to assist the inmates

26   should he be needed during the Saturday services.  (U.F. 31, 32, 33.)  Plaintiff does not dispute

27   that services are scheduled on Saturday mornings, but contends that they are not Messianic

28   Jewish services because they do not have a Messianic Jewish chaplain or the essential religious

1  artifacts to hold Sabbat.  (ECF No. 52 at 1.)  However, Plaintiff has not shown that any CDCR

2  policy, practice, or procedure has substantially burdened his access to Sabbat services.  Cf.

3  Greene v. Solano Cty. Jail, 513 F.3d 982, 988 (9th Cir. 2008) (policy that prohibits inmate from

4  attending group worship substantially burdens inmate's ability to exercise his religion).

5        The Court recommends that Defendants' motion for summary judgment on the Sabbat

6  worship services claim be granted.

7              5.      Two Special Religious Meals Per Year

8        Plaintiff seeks to be allowed to attend two kosher special religious meals per year.

9  Defendants contend that Plaintiff has been approved to attend two special religious meals.

10        Religious groups within CSATF are allowed two special religious meals a year.  (U.F.

11  38.)  Plaintiff is scheduled for inclusion in the Passover meals, Yom Kippur celebration, and

12  Hanukkah celebration at CSATF.  (U.F. 37, 40, 41.)  Plaintiff counters that while he has been

13  approved to attend these celebrations, these are Traditional Jewish services and not Messianic

14  Jewish services.  Plaintiff states that he did attend the Passover and Yom Kippur celebrations but

15  did not attend the Chanukah service because it was for Traditional Jewish inmates.  (ECF No. 52

16  at 2-3.)  Plaintiff contends that he was not allowed to worship Yeshua which substantially

17  burdens his religious exercise and seeks separate meals for the Messianic Jewish inmates.  (Id.)

18        Defendants submit an April 7, 2015 memorandum to staff on inmate participation which

19  states: "A communal ceremonial meal called a Passover Seder is generally performed the first

20  and/or second night of the holiday.  The observance of these Seder(s) consists of a religious

21  ceremony centered around ceremonial food items specific to Passover."  (ECF No. 41-5 at 47.)

22  Requiring Plaintiff to participate in a religious service with Traditional Jewish inmates whose

23  beliefs are significantly different than his would substantially burden Plaintiff's religious

24  exercise.  See Pugh v. Goord, 571 F.Supp.2d 477, 505 (S.D.N.Y. 2008) (denial of separate

25  Shi'ite Muslim services substantially burdens inmate's religious exercise.); Mann v. Wilkinson,

26  No. 2:00-CV-0706, 2007 WL 4562634, at *4 (S.D. Ohio Dec. 21, 2007) ("Requiring an inmate

27  to worship with 'someone whose beliefs are significantly different from or obnoxious to' the

28  beliefs of plaintiff may be a substantial burden on religion.).  Plaintiff has presented evidence to

1  create a genuine issue of material fact as to whether his religious exercise is substantially

2  burdened if he is required to participate in religious services with Traditional Jewish inmates due

3  to the differences in their beliefs.

4       Defendants have not addressed whether there is a compelling government interest for

5  requiring Traditional Jewish inmates and Messianic Jewish inmates to participate in religious

6  meals together.  Defendants have not met their burden to show that requiring Traditional Jewish

7  inmates and Messianic Jewish inmates to participate in the same religious meals together has

8  been taken in furtherance of a compelling government interest and was narrowly tailored to that

9  interest.  Accordingly, Defendants motion for summary judgment on the religious meal claims

10  should be denied.

11       6.   Three Kosher Meals Per Day

12       Plaintiff seeks to receive three kosher meals daily.  Defendants contend that Plaintiff is

13  receiving Kosher meals and has been since February 13, 2014.  (U.F. 25.)  Plaintiff concedes that

14  he was placed on the Jewish Kosher diet program but argues that it was only because of this

15  lawsuit.  Plaintiff states that because there is no Messianic Jewish diet program and no Messianic

16  Jewish chaplain to administer it he could be removed from the Kosher meal diet at any time.

17       "[A] case is moot when the issues presented are no longer 'live' or the parties lack a

18  legally cognizable interest in the outcome."  Williams v. Alioto, 549 F.2d 136, 140-41 (9th Cir.

19  1977).  Courts have found claims under RLUIPA to be moot where the inmate is no longer

20  subject to the alleged conditions because he has been transferred to another institution,

21  Dearwester v. Sacramento Cty. Sheriff's Dep't, No. 2:13-CV-2066 MCE DAD, 2015 WL

22  4496400, at *2 (E.D. Cal. July 23, 2015), report and recommendation adopted, No. 2:13-CV-

23  02066-MCE, 2015 WL 5147568 (E.D. Cal. Sept. 1, 2015); Bush v. Donovan, No. 12CV2573

24  GPC NLS, 2014 WL 1028468, at *5 (S.D. Cal. Mar. 17, 2014); released from custody, Alvarez

25  v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012); Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir.

26  2015); the policy creating the substantial burden on the religious exercised has been changed,

27  Rognirhar v. Foston, No. CV-08-892-LRS, 2013 WL 4494475, at *2 (E.D. Cal. Aug. 19, 2013);

28  or the relief requested in the claim has been received, Patterson v. Ryan, No. CV 05-1159-PHX-

1   RCB, 2011 WL 3799099, at *7 (D. Ariz. Aug. 26, 2011), aff'd sub nom. Patterson v. Moore, 591

2   F.App'x 622 (9th Cir. 2015); Boyd v. Carney, No. C11-5782 BHS/KLS, 2012 WL 4903386, at

3   *8 (W.D. Wash. Aug. 1, 2012), report and recommendation adopted, No. C11-5782BHS, 2012

4   WL 4896935 (W.D. Wash. Oct. 15, 2012); Von Staich v. Hamlet, No. 04-16011, 2007 WL

5   3001726, at *2 (9th Cir. Oct. 16, 2007) (unpublished) (under RLUIPA a claim for injunctive

6   relief is moot when the plaintiff has received the relief requested in the complaint).

7          In this instance, Plaintiff has been receiving three Kosher meals daily for over two years.

8   Therefore, Defendants are not liable under RLUIPA pursuant to 42 U.S.C. 2000cc-3(e).  Plaintiff

9   does not dispute that he has been receiving Kosher meals, but argues that they could be

10  discontinued at any time.

11         To the extent that Defendants are not entitled to the safe harbor provision, courts have

12  been cautious in finding that a case has become moot where the defendant has voluntarily ceased

13  the challenged conduct.  Smith v. Univ. of Washington, Law Sch., 233 F.3d 1188, 1194 (9th Cir.

14  2000).  A case can be mooted by the voluntary cessation of conduct where there is no reasonable

15  expectation that the violation will recur and "interim relief or events have completely and

16  irrevocably eradicated the effects of the alleged violation."  Smith, 233 F.3d at 1194.  Here, the

17  Court finds that Plaintiff's meal claim is moot.

18         Plaintiff's claim in this action was that the prison had refused to provide him with Kosher

19  meals because the Jewish Chaplain did not recognize Messianic Jews as being Jewish.  (ECF No.

20  1 at ¶ 27.)  Subsequently on appeal, Plaintiff was told to fill out a Jewish Chaplain Verification

21  form.  (Id. at ¶ 28.)  Plaintiff filled out the form, but was informed that there was no Jewish

22  Chaplain on staff so no kosher meals were being approved.  (Id.)  The appeal also informed

23  Plaintiff that the policy was under review in Sacramento.  (Id.)  On February 13, 2014, Plaintiff's

24  request for kosher meals was approved.  (ECF No. 41-5 at 39-40.)

25         Plaintiff does not dispute that he has been receiving kosher meals since his request was

26  approved but argues that he should not be receiving kosher meals because he is not recognized as

27  being Jewish under Cal. Code Regs. Tit. 15, § 3054.2.  Section 3054.2(e) was amended on June

28  29, 2016.  Pursuant to this amendment, "[k]osher meals shall be available at designated

institutions for inmates with a religious dietary need that cannot be met by another religious diet option or by the mainline diet."  Cal. Code Regs. tit. 15, § 3054.2(a).  "Inmates may seek participation in the Kosher Diet Program by submitting to any Chaplain a CDCR Form 3030, Religious Diet Program Request.  The Chaplain may approve the Form 3030 request or refer it to the Religious Review Committee (RRC) for determination."  Cal. Code Regs. tit. 15, § 3054.2(a).  "Only the RRC may make the determination to deny the CDCR Form 3030, Religious Diet Program Request."  Cal. Code Regs. tit. 15, § 3054.2(g)(3).

This change to section 3054.2 was due to In re Garcia, 202 Cal.App.4th 892 (2012).  The In re Garcia court found that the CDCR regulations for the Jewish Kosher Diet Program limited participation to traditional Jewish inmates "as determined by a Jewish Chaplain" which was an artificial construct, and did not consider whether the inmate's "system of religious beliefs includes maintaining a kosher diet."  Id. at 905.  The new regulations no longer limit the Jewish Kosher diet to Traditional Jewish inmates nor is the decision to deny the program left to the Jewish Chaplain.  Only the RRC can make the decision to deny a request for a Jewish Kosher Diet Program.

The Court notes that this was not a voluntary change in the policy due to the filing of this lawsuit, but was based on the finding of In re Garcia that the regulation placed a substantial burden on inmates whose system of religious beliefs required adherence to a kosher diet.  Since, the change to section 3054.2 was not based on Plaintiff's filing this suit, the Court finds that there is no reasonable expectation that Plaintiff will be denied kosher meals once this Court issues judgment in the action.

The Court recommends that Defendants' motion for summary judgment on the kosher meal claim be granted.

## VI.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment be GRANTED IN PART AND DENIED IN PART as follows:

a.     Defendants' motion for summary judgment on Plaintiff's third party claims be GRANTED;

b.     Defendants' motion for summary judgment on Plaintiffs RLUIPA claims for Messianic Jewish religious personal items, approval of Plaintiff's designated vendors, Saturday morning Sabbat services, and three kosher meals daily be GRANTED;

b.     Defendants' motion for summary judgment on Plaintiff's RLUIPA claims for a Messianic Jewish chaplain, two special religious meals per year, and Messianic Jewish items for corporate worship be denied; and

2.     This action proceed on Plaintiff's individual claims against Defendants Jerald Sharon, Rosa Guembe, Kathleen Allison, Ralph Diaz, D. Foston, Darryl Heterbrink, R. Hall, Jose D. Ojeda, and J. D. Lozano's RLUIPA claims for a Messianic Jewish chaplain, two special religious meals per year, Messianic Jewish items for corporate worship, and a religious designation for Messianic Judaism to be officially accepted and endorsed by CDCR, and claims for violation of the First Amendment; and against Defendant Jerald Sharon for Plaintiff's individual equal protection claim.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district

//
//
//
//
//
//

judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 27, 2016**

UNITED STATES MAGISTRATE JUDGE